UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANGELA MARIE O'BRYANT,<br>            Plaintiff,<br><br>       v.<br><br>KILOLO KIJAKAZI,<br>Acting Deputy Commissioner, Social Security<br>Administration,<br>            Defendant. | CIVIL ACTION<br>NO. 21-40043-TSH |

MEMORANDUM OF DECISION AND ORDER
September 30, 2022

**HILLMAN, S.D.J.**

This is an action for judicial review of a final decision by the Commissioner ("Commissioner" or "Defendant") of the Social Security Administration ("SSA") denying the application of Angela Marie O'Bryant ("Plaintiff" or "O'Bryant") for Social Security Disability Insurance Benefits. This Memorandum of Decision and Order addresses Plaintiff's Motion For Order Reversing The Commissioner's Decision (Docket No. 17) and Defendant's Motion For Affirming The Decision of the Commissioner (Docket No. 19).

O' Bryant contends that the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination is unsupported by substantial evidence as she failed to properly evaluate the opinion of the treating Nurse Practitioner, Karen Fleming ("Ms. Fleming"), and instead inserted her own lay medical opinion. She requests that the ALJ's decision be reversed,

or the matter remanded for further review. The Commissioner, on the other hand, argues that as noted by the ALJ, Ms. Fleming's opinion that O'Bryant was completely disabled stands in stark contrast with her largely benign treatment notes and the treatment notes from other providers which demonstrated some fluctuating abnormalities, but not the ongoing disabling limitations that O'Bryant alleges she suffers from (due to back and respiratory problems and headaches). Moreover, the ALJ's analysis is supported by the assessment of state agency reviewing physician K. Malin Weeratne, MD ("Dr. Weeratne"), and therefore, the ALJ's decision finds substantial support in the record and must be affirmed. For the reasons set forth below, Defendant's motion is *granted,* and Plaintiff's motion is *denied*.

## Standard of Review

Under the Social Security Act (the "Act"), this Court may affirm, modify, 'or reverse the final decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The Commissioner's findings at each step are conclusive if they are supported by substantial evidence and the Commissioner has applied the correct legal standard. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). "Substantial evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not. Rather, '[w]e must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion.' " *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)) (alterations in original). This is true "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987); *see Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523, 101 S.Ct. 2478 (1981) ("[T]he possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.")

"[T]he responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001) (citation omitted); *see Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 143-44 (1st Cir. 1987). It is the ALJ's responsibility to weigh conflicting evidence and resolve issues of credibility. *Rodriguez*, 647 F.2d at 222. Therefore, "[j]udicial review of a Social Security Claim is limited to determining whether the ALJ used the proper legal standards, and found facts based on the proper quantum of evidence." *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

It is Plaintiff's burden to prove that she is disabled under the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S.Ct. 2287. Plaintiff bears the burden of production and persuasion at steps one through four of the sequential evaluation process, *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001), including the burden of establishing the scope of her residual RFC, *see Yuckert*, 482 U.S. at 146, 107 S.Ct. 2287; *Vazquez v. Sec'y of Health & Human Servs.*, 683 F.2d 1, 2 (1st Cir. 1982); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

## Facts[1]

### Procedural Background

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on July 24, 2018 asserting a disability onset date of August 6, 2017; she alleged that she suffers from the following disabling impairments: anxiety disorder; sleep apnea; asthma;

---

[1] The parties are familiar with the factual history of this case and the applicable five-step sequential analysis. Accordingly, the court will review the procedural and substantive history of the case as it relates to the arguments set forth by the claimant, O'Bryant.

attention deficit hyperactivity disorder ("ADHD"); depression; post-traumatic stress disorder; learning disability; lung disorder; obesity; and thyroid cancer. [2] The application was initially denied on March 15, 2019 (T 129, 130) and after reconsideration, on May 17, 2019 (AR 129-30, 165-166).  On July 20, 2020, Administrative Law Judge Ellen Parker Bush ("ALJ") issued a decision unfavorable to Plaintiff (the "ALJ Decision")[3].  On February 19, 2021, the Appeals Council denied O'Bryant's request for further review.

The ALJ's Findings

The ALJ concluded that O'Bryant has not been under a disability, within the meaning of the Act from August 6, 2017, through the date of the decision (July 20, 2020).  In so holding, the ALJ applied the familiar five-step sequential evaluation process for determining whether an individual is disabled and made the following findings:

> 1. **O'Bryant meets the insured status requirements of the Act through June 30, 2022.**
>
> 2. **O'Bryant has not engaged in substantial gainful activity since August 6. 2017 (the alleged onset date).**
>
> 3. **O'Bryant has the following severe impairments: degenerative disc disease in the cervical and lumbar spine, history of pulmonary emboli, asthma, anxiety and history of attention deficit hyperactivity disorder (ADHD).**
>
> 4. **O'Bryant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.**
>
>     More specifically, with regards to O'Bryant's degenerative disc disease, the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under the requisite listings.  As to her history of pulmonary emboli, the evidence does not establish the necessary medical exacerbations or complications resulting in the

---

[2] A transcript of the Social Security Administration Official Record ("AR.") has been filed with the court under seal. (Docket No. 14). Citations to the AR page numbers are those assigned by the agency and appear on the lower right- hand corner of each page.
[3] The ALJ's Decision can be found at AR pp. 10-27.

required hospitalizations, nor does the evidence document the necessary tests to satisfy the requirements of the applicable listing. As to her asthma, the evidence fails to document any of the medical tests necessary to satisfy the listing requirements and there is no evidence that she has had the exacerbations or complications resulting in the required hospitalizations.[4] The ALJ further found that O'Bryant has moderate limitations in understanding, remembering or applying information and in interacting with others. The ALJ found she also had moderate limitations with regard to concentrating, persisting or maintain pace and for adapting and managing oneself. Given these findings, the ALJ determined that O'Bryant does not meet the "paragraph B" or "paragraph C" criteria for mental impairment. The ALJ separately examined whether O'Bryant meets the "paragraph C" criteria for mental impairment and concluded that she does not.

     5. **O'Bryant has the RFC to perform light work, with specified limitations on lifting, standing and walking during the workday, as well as climbing, balancing, stooping, and like movements. O'Bryant must avoid concentrated exposure to temperature extremes and vibrations, and moderate exposure to respiratory irritants. She can sustain attention and concentration consistent with performance of simple tasks over 2 periods in an 8-hour day. She can also have brief interaction with the general public (with no requirement for intense social demand), can work in teams or tandem occasionally, and can adapt to minor and infrequent change to tasks.**

     In making this determination, the ALJ considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence. The ALJ also considered the medical opinions and prior administrative medical findings in accordance with applicable regulations. While the ALJ found that O'Bryant's medically determinable impairments could be expected to cause her alleged symptoms, for reasons extensively detailed in the decision, the ALJ did not find that O'Bryant's statements concerning the intensity, persistence and limiting effects of her symptoms were consistent with the medical evidence and other evidence in the record.

     6. **O'Bryant is unable to perform any past relevant work.**

     7. **O'Bryant is defined as a "younger individual" as of the alleged disability onset date.**[5]

     8. **O'Bryant has limited education and is able to communicate in English.**

---

[4] The ALJ made findings that O'Bryant's mental health impairments do not meet the listing criteria. O'Bryant has not appealed those findings and therefore, the Court need not further address any such alleged impairment.

[5] O'Bryant was 38 on the alleged onset date, 41 at the time of the ALJ's decision, and is presently approximately 43 years old.

  9. **Transferability of job skills is not material to the determination of disability because claimant is not "disabled."**

  10. **Considering O'Bryant's age, education, work experience and RFC, there are jobs which exist in significant numbers in the national economy that O'Bryant can perform.**

  More specifically, according to the Vocational Expert, O'Bryant could perform the requirements of representative occupations such as garment sorter (199,330 jobs nationwide), linen grader (471,750 jobs nationwide), and dispatcher-router (54,000 jobs nationwide).

  11. **O'Bryant has not been under a disability, as defined in the Act, from August 6. 2017, through the date of decision.**

Medical Evidence

Following is a summary of the medical evidence, as found by the ALJ. Based on these findings, the ALJ concluded that the objective findings in this case fail to provide strong support for O'Bryant's allegations of disabling symptoms and limitations and do not support the existence of limitations greater than the above listed RFC.

*Brief Summary of Medical Treatment and Notes*

The ALJ noted that O'Bryant's treatment notes show she has undergone treatment for degenerative disc disease in the cervical and lumbar spine, and has a history of pulmonary emboli, asthma, anxiety and ADHD. O'Bryant alleged that pains in her back and legs and her mental conditions were the main impairments that prevented her from working. The ALJ also noted that the treatment notes also show that O'Bryant has reported weakness and tenderness throughout her body, and has complained of limited range of motion, numbness, tingling and swelling in her extremities, fatigue, shortness of breath, chest and joint pains, ache, back, neck and leg pains, and has also received treatment for mental impairments.

After review, the ALJ found that the medical evidence in the record does not show that the claimant's impairments are debilitating or cause restrictions greater than the above listed

RFC assessment. The ALJ also found that O'Bryant's imaging and lab results showed no major abnormalities. A detailed summary of the treatment notes, imaging and lab results and other medical records is contained in the ALJ's Decision, and the Court will not repeat those findings here.

### *Weight Attributed to Medical Opinions*

As for medical opinions and prior administrative medical findings, the ALJ determined that she could not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources. The ALJ's conclusions regarding the medical opinions and prior administrative medical findings is summarized below.

State agency medical consultant Lucinda Wheelock, MD ("Dr. Wheelock") submitted a report and opined that O'Bryant could perform light work with exertional limitations. State agency medical consultant Dr. Weeratne submitted a report and opined that O'Bryant could perform light work with exertional, postural and environmental limitations. The ALJ found Dr. Weeratne's opinions persuasive but Dr. Wheelock's opinions unpersuasive. More specifically, the ALJ found that while the consultants' opinions were supported by their explanation of the evidence that they considered in determining O'Bryant's functional limitations, Dr. Weeratne's opinions were consistent with other evidence found in the record, but Dr. Wheelock's opinions were not. Specifically, the evidence in the record, including O'Bryant's testimony, showed that O'Bryant has a treatment history for her physical impairments that would support the functional limitations previously found, however, the evidence also shows that she routinely had a mostly normal review of her musculoskeletal and respiratory systems and at times reported an improvement in her symptoms. O'Bryant also routinely denied experiencing headaches,

weakness or shortness of breath. Furthermore, the notes indicated that she had a history of non-compliance and continued to smoke against medical advice. This evidence would support the limitations previously found, which were similar to the ones opined by Dr. Weeratne.

State agency psychiatric consultant Isabel C. Murphy, Psy.D. ("Dr. Murphy") submitted a report and opined that O'Bryant had no limitations in the "B" criteria listings, except the area of concentrating, which she opined O'Bryant had a moderate limitation. She further opined that O'Bryant could sustain attention and pace for simple tasks. State agency psychological consultant Jan Jacobson, Ph.D. submitted a report and concurred with Dr. Murphy's opinions. The ALJ found the consultants' opinions partially persuasive. While the consultants' opinions were supported by their explanation of the evidence that they considered in determining O'Bryant's functional limitations, their opinions were only partially consistent with other evidence found in the record.

O'Bryant's treating nurse practitioner, Ms. Fleming, submitted an assessment and opined that O'Bryant could sit for 20 minutes, stand for 15 minutes and would have to take breaks every 15 minutes. She further opined that O'Bryant would need to lie down multiple times per day and could only occasionally lift up to 10 pounds but never more than that. She opined that O'Bryant was unable to use her hands and was disabled. The ALJ found Ms. Fleming's opinion to be wholly unpersuasive because the extreme number of symptoms and limitations reported by Ms. Fleming have no support in her own contemporaneous treatment notes (the notes do not reflect O'Bryant's report of these symptoms or limitations). The ALJ instead found Ms. Fleming's notes to have been routinely benign. Moreover, the ALJ noted that Ms. Fleming had provided nothing but the most routine and conservative care and in no way had provided a level of care that would be necessitated by impairments so severe as to satisfy a

finding of disabled. Moreover, the extreme limitations noted by Ms. Fleming were determined to be offered without any explanation. The ALJ then noted that pursuant to 20 CFR 404.1520c, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) the more persuasive the medical opinions will be," and "[c]onversely, when a medical opinion lacks such relevant supporting explanations, it cannot be said to be supported and, as it is lacking in that support, cannot be said to be persuasive." AR, 24-25. Additionally, the ALF found that treatment notes by other providers indicate that O'Bryant routinely had a mostly normal review of systems.

## Discussion

The ALJ determined that O'Bryant retained the RFC to perform light work with: (1) limitations on lifting, standing and walking during the workday, as well as climbing, balancing, stooping, and like movements; (2) avoidance of concentrated exposure to temperature extremes and vibrations, and moderate exposure to respiratory irritants; (3) the ability to sustain attention and concentration consistent with performance of simple tasks over 2 periods in an 8-hour day; (4) the ability to have brief interaction with the general public (with no requirement for intense social demand) and to work in teams or tandem occasionally; and (5) the ability to adapt to minor and infrequent change to tasks. O'Bryant asserts that the ALJ's RFC determination is unsupported by substantial evidence as she failed to properly evaluate Ms. Fleming's opinion, and instead inserted her own lay opinion.

In support of her contention that the ALJ erred, O'Bryant, notes that on September 9, 2019, Ms. Fleming determined that the symptoms associated with her impairments were severe enough to constantly interfere with the attention and concentration required to perform simple work-related tasks. Ms. Fleming also determined O'Bryant would be required to recline or lie

9

down multiply times a day in excess of the typical breaks allowed. Ms. Fleming further opined Ms. O'Bryant would be subject to the following limitations: she could not walk any city blocks without rest or significant pain; she could walk 20-30 minutes at a time; she could stand/walk for 15 minutes before needing to rest; she would require breaks every 15 minutes; she could occasionally lift/carry up to 10 pounds; she could never lift/carry 20 pounds or more; she is unable to use bilateral hands for grasping, turning, or twisting objects; she is unable to use bilateral arms for reaching.

      The essence of O'Bryant's argument is that in determining her RFC, the ALJ improperly weighed the medical opinions of a treating source and the non-examining state agency consultants. An ALJ must "always consider the medical opinions in [the] case record," 20 C.F.R. §§ 404.1527(b); 416.927(b), and regulations promulgated pursuant to the Act prioritize the opinions of a claimant's treating sources. *See* 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1) (stating that "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). The treating source rule provides that the ALJ should give "more weight" to the opinions of treating physicians because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2). Controlling weight will be given to a treating physician's opinion on the nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Id.* However, the ALJ does not always have to give a treating physician's opinion controlling

weight. *Arroyo v. Sec'y of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991) (observing that "[t]he law in this circuit does not require ALJs to give greater weight to the opinions of treating physicians").

The regulations allow the ALJ to discount the weight given to a treating source opinion where it is inconsistent with other substantial evidence in the record, including treatment notes and evaluations by examining and non-examining physicians. *Arruda v. Barnhart*, 314 F.Supp.2d 52, 72 (D.Mass. 2004); 20 C.F.R. § 404.1527(c)(2)-(4); 416.927(c)(2)-(4). Where controlling weight is not given to a treating source opinion, the ALJ considers an array of factors to determine what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the degree to which the opinion can be supported by relevant evidence, and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(2)-(6); 416.927(c)(2)-(6). Further, the regulations require adjudicators to explain the weight given to a treating source opinion and the reasons supporting that decision. *See* 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). The ALJ is required to give "specific reasons for the weight given to the treating source's medical opinion ... and must be sufficiently specific to make [it] clear to any subsequent reviewers[.]" SSR 96-2p, 1996 WL 374188, at *5; *see also, e.g.*, *Shields v. Astrue,* 2011 WL 1233105, at *8 (D. Mass. Mar. 30, 2011) (Dein, M.J.) ("Because the [ALJ] supported his rejection of the treating physician's opinions with express references to specific inconsistencies between the opinions and the record, [his] decision not to grant [the treating physician's] opinions significant probative weight was not improper."); *see also Sanchez v. Colvin*, 134 F.Supp.3d 605, 614-15 (D. Mass. 2015).

"Inconsistencies between a treating physician's opinion and other evidence in the record are for the ALJ to resolve." *Roshi v. Comm'r of Soc. Sec.*, 2015 WL 6454798, at *6 (D. Mass. Oct. 26, 2015), quoting *Lee v. Astrue*, 2011 WL 2748463, at *11 (D. Mass. July 14, 2011). The hearing officer is not required to, nor could she reasonably, discuss every piece of evidence in the record. *Sousa v. Astrue*, 783 F. Supp. 2d 226, 234 (D. Mass. 2011), citing *National Labor Relations Bd. v. Beverly Enterprises–Massachusetts*, 174 F.3d 13, 26 (1st Cir. 1999). Indeed, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party," *Ramos-Birola v. Astrue*, 2012 WL 4412938, at *20 (D. Mass. Sept. 24, 2012) (alteration in original), quoting *N.L.R.B. v. Beverly Enters.-Mass., Inc.*, 174 F.3d 13, 26 (1st Cir. 1999) (internal quotation marks omitted).

In this case, the ALJ made comprehensive findings relative to O'Bryant's alleged medical ailments and provided a detailed summary of O'Bryant's medical history and treatment. The ALJ stated that she could not defer or give any specific evidentiary weight, including controlling weight, to any prior medical findings or opinions, including those from medical sources. As summarized in the fact section above, the ALJ then gave very specific details as to the weight she gave to the opinions of each of the relevant medical sources and why she found that such opinions were persuasive/not persuasive in terms of determining O'Bryant's RFC.

As to the state agency consultants, Drs. Weeratne and Wheelock, both found that O'Bryant could perform light work with limitations—however, they differed as to the extent of those limitations. The ALJ found Dr. Weeratne's opinions persuasive because they were consistent with objective medical evidence in the record but found Dr. Wheelock's opinion unpersuasive because the limitations imposed (or not imposed) were inconsistent with objective medical evidence in the record (Dr. Wheelock opined that O'Bryant could perform light work

with only exertional limitations, while Dr. Weeratne opined she could perform light work with exertional limitations *and* postural and environmental limitations). Moreover, in giving persuasive weight to Dr. Weeratne's opinion, the ALJ explained that evidence in the record, including O'Bryant's testimony, established that she has a treatment history for her physical impairments that would support assigned RFC. The ALJ also pointed out that record medical evidence also shows that O'Bryant routinely had a mostly normal review of her musculoskeletal and respiratory systems and at times reported an improvement in her symptoms, and routinely denied experiencing headaches, weakness or shortness of breath. Furthermore, treatment notes indicated that she had a history of non-compliance and continued to smoke against medical advice. The ALJ concluded that such evidence supports the limitations previously found, which were similar to the limitations opined by Dr. Weeratne.

The ALJ also discussed Ms. Fleming's opinion that based on her assessment of O'Bryant, she is disabled.[6] Ms. Fleming's opinion is based on the following findings she made regarding O'Bryant's limitations: (1) she could sit for 20 minutes and stand for 15 minutes; (2) she would have to take breaks every 15 minutes; (3) she would need to lie down multiple times per day; (4) she could only occasionally lift up to 10 pounds but never more than that; and (5) she was unable to use her hands.

The ALJ found the extreme number of symptoms and limitations as to which Ms. Fleming opined were determined without any explanation and had no support in her own contemporaneous treatment notes which were routinely benign. Moreover, the ALJ noted that Ms. Fleming had provided nothing but the most routine and conservative care-- not a level of

---

[6] As part of her physical assessment of O'Bryant, Ms. Fleming noted the following diagnoses: longstanding depression/anxiety and mood disorder, degenerative disc disease, chronic bilateral backpain without sciatica, pulmonary embolism, asthma and thyroid cancer,

care that would be necessitated by impairments severe enough to satisfy a finding that O'Bryant is disabled. The ALJ then cited to applicable regulations which provide that medical opinions which lack supporting explanations are not persuasive. *See* 20 CFR 404.1520c. Finally, the ALJ found that contrary to Ms. Fleming's findings, treatment notes by other providers indicate that O'Bryant routinely had a mostly normal review of systems. For these reasons, the ALJ found Ms. Fleming's opinion to be "wholly unpersuasive".

The outcome of this case comes down to whether the ALJ properly analyzed the medial sources" conflicting opinions.

> Typically, the written opinion of a non-examining, non-testifying doctor who simply reviews the written medical evidence cannot alone constitute substantial evidence for an ALJ's conclusion. That is because such an opinion 'lacks the assurance of reliability' that comes from first-hand observation. The evidentiary weight assigned to the opinion of a non-examining physician "will vary with the circumstances, including the nature of the illness and the information provided [by] the expert.' The report of an advisory physician may be considered substantial evidence if the physician had access to most of the medical evidence for their review and if the reports of multiple physicians 'tend somewhat to reinforce each other's conclusions.' The ALJ's conclusion may be based upon the reports of a non-examining, non-testifying physician when 'the record contains considerable evidence that would allow a reasonable person to' reach the same conclusion.

*Pickhover v. Kijakazi*, No. CV 20-11967-FDS, 2022 WL 876944, at *11–12 (D. Mass. Mar. 24, 2022)(internal citations and citations to quoted cases omitted).   Thus, for example, the ALJ can base her finding on the written opinion of non-treating doctors where their report reflects that their assessment is based on a comprehensive evaluation of the  medical evidence. *Id.*

In this case, Drs. Weeratne and Wheelock *both* determined that O'Bryant was not disabled based on detailed assessments of O'Bryant's medical history and after having reviewed relevant medical evidence which was available to them. The Court finds that the evaluations go beyond "brief conclusory statements" and a "mere checking of boxes."  *See id.* As previously discussed, the ALJ accepted Dr. Weeratne's assessment as persuasive after finding it was

14

consistent with the objective medial evidence in the record. Ms. Fleming's assessment, on the other hand, while involving slightly more than "checking boxes," falls more into the category of a brief medical statement in that it fails to indicate how she reached her conclusions and involves little to no analysis of the medical evidence or O'Bryant's alleged impairments.

Contrary to O'Bryant's contention, the ALJ did not fail to properly evaluate Ms. Fleming's opinion, rather, in accordance with applicable regulations, the ALJ articulated how she considered Ms. Fleming's and other source's medical opinions" and made specific findings as to how persuasive she found all the medical opinions. Moreover, while O'Bryant cherry picks evidence in the medical records which she argues supports Ms. Fleming's assessment that she is disabled, the ALJ set forth in detail O'Bryant's relevant medical history and highlighted the medical history, treatment notes and findings which contradict Ms. Fleming's assessment. The Court finds that the ALJ applied the correct legal standard and her decision to give Ms. Fleming's opinion little weight is substantially supported by the evidence in the record.

O'Bryant also asserts that Dr. Weeratne's evaluation is deficient in that Dr. Weeratne did not consider relevant medial evidence which was not available to him until after the issuance of such evaluation, *i.e.,* the medical records that post-date his review. She then argues that the ALJ erred by finding his opinion persuasive and necessarily (and improperly) relied on her own lay opinion in assessing O'Bryant's RFC in light of such medical evidence. However, as noted by the Respondent, Dr. Weeratne had reviewed one of the medical reports cited by O'Bryant. More to the point, none of the medical records cited by O'Bryant contain diagnoses or any other evidence which differs markedly from the evidence that Dr. Weeratne reviewed. Put another way, Dr. Weeratne reviewed most of the relevant medical evidence and that evidence he did not review (because it post-dated his assessment) was similar to that upon which he based his

opinion. *See Zaragoza v. Saul*, 474 F. Supp.3d 378, 382–83 (D. Mass. 2020)(where post-hearing medical evidence is proffered, an ALJ may still accord substantial weight to a physician's review of an incomplete medical record where there have been no appreciable changes in the patient's condition).

Moreover, while the Court agrees with O'Bryant that "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record[,] …where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.". *Manso-Pizarro,* 76 F.3d 15, 17 (1st Cir. 1996)(internal citations omitted). In this case, at most, the ALJ simply reviewed the latest medical records, which do not indicate any disabling physical impairments, and made a common-sense judgment. Accordingly, the Court find that the ALJ's determination is supported by substantial evidence in the record. *See Zaragoza*, 474 F.Supp.3d at 382-83 (an ALJ's assessment is, therefore, supported by substantial evidence when it reasonably relies upon a medical expert's opinion or upon commonsense judgments based on the administrative record).

## Conclusion

For the reasons set forth above, addresses Plaintiff's Motion For Order Reversing The Commissioner's Decision (Docket No. 17) is ***denied*** and Defendant's Motion For Affirming The Decision of the Commissioner (Docket No. 19) is ***granted***.

**SO ORDERED**.

                            /s/ ***Timothy S. Hillman***
                            **TIMOTHY S. HILLMAN**
                            **SENIOR UNITED STATES DISTRICT JUDGE**